### UNITED STATES v. BLAKEMAN.

(District Court, N. D. New York. July 20, 1918.)

1. STATUTES ⬅241(1)—CRIMINAL STATUTES—CONSTRUCTION.

While a criminal statute should be strictly construed, the construction should not rob it of force and vigor to accomplish the purpose for which it was enacted and intended.

2. ARMY AND NAVY ⬅40—SELECTIVE SERVICE ACT—FALSE NOTARIAL CERTIFICATE.

Under Selective Service Act, § 6, declaring that any person, who shall make or be a party to any false statement or certificate as to the fitness or liability of himself or any other person for military service, shall, if not subject to military law, be guilty of a misdemeanor, the making of a notarial certificate falsely reciting that doctors, whose statements were filed in support of a claim for exemption from military service, appeared before the notary, falls within the scope of the section, even though the statements by the doctors were not in themselves false.

3. INDICTMENT AND INFORMATION ⬅125(3)—SEPARATE OFFENSES—SINGLE COUNT—SELECTIVE SERVICE ACT.

Where a notary appended false certificates to statements by several physicians, which were intended to be used in connection with a claim for exemption from military service, the false certification of each statement was a separate offense under the Selective Service Act, and the several offenses could not be charged in a single count of the indictment.

4. INDICTMENT AND INFORMATION ⬅125(2)—COUNTS—OFFENSES.

Only one offense can be charged in each count of an indictment.

5. ARMY AND NAVY ⬅40—SELECTIVE SERVICE ACT—OFFENSES—INDICTMENT—"FITNESS"—"UNFITNESS."

Indictment charging making of false notarial certificate as to unfitness and liability of another person for military service, is insufficient to charge offense of making false statement or certificate as to fitness or liability of another person to military service denounced by Selective Service Act, § 6, the words "fitness" and "unfitness" not meaning the same thing, although a statement as to the fitness of one for military service might include facts as to "unfitness."

[Ed. Note.—For other definitions, see Words and Phrases, First Series, Fitness.]

At Law. Raymond A. Blakeman was indicted under Selective Service Act May 18, 1917, c. 15, § 6, 40 Stat. 76, for the offense of making a false notarial statement as to the unfitness and liability of one for service. On demurrer to indictment. Demurrer sustained.

D. B. Lucey, U. S. Atty., of Ogdensburg, N. Y., and J. W. Davern, of Plattsburg, N. Y., for the United States.

John W. Searle, of Albany, N. Y., for defendant.

RAY, District Judge. By act of Congress affidavits and acknowledgments for use in all selective draft cases and proceedings may be taken before state officers including notaries public. Section 6 of the Selective Service Law provides, amongst other things:

"And any person who shall make or be a party to the making of any false statement or certificate as to the fitness or liability of himself or any other person for service under the provisions of this act, or regulations made by the President thereunder, or," etc., "shall, if not subject to military law, be guilty of a misdemeanor," etc.

This defendant is not subject to military law within the provision. This indictment charges, in substance, that one Henry Mandes filed with the selective draft board of the city of Rensselaer, N. Y., three statements in support of a claim for exemption from military service, and which statements related to and bore on the physical condition of said Mandes, and were made and signed by three certain doctors. The names of these doctors are not given. The indictment also charges in substance that these statements made by these doctors bore on their face a notarial certificate to the statements of said doctors, made and signed and added thereto by said Raymond A. Blakeman, viz.:

"The said Raymond A. Blakeman did add a notarial certificate to the statements of said doctors which had theretofore been given to one Henry Mandes, which were brought to the said Blakeman and were certified to by him as if he had personally taken the acknowledgment of the said three doctors, when in truth and in fact the said three doctors never appeared before him and never acknowledged to him that the statements made by them were true; the said Henry Mandes thereafter filing with the draft board of the city of Rensselaer these three acknowledged statements in a claim for exemption," etc.

The indictment does not charge that any of the statements of the said doctors contained in said papers were false or untrue, or that said doctors did not actually sign their respective statements. The allegation of falsity is that the notarial certificate added was false, in that it certified in due form that the doctors respectively appeared before the notary and acknowledged the execution of or making the signature to the statements signed by him, when in truth and fact such doctors did not so appear and did not acknowledge the execution of or the genuineness of the signatures to the statements at all, or in any way.

[1, 2] The defendant on the argument of this demurrer urges that the falsity of these statements, respectively in this respect, is immaterial, and does not bring the case within the meaning, or letter, or spirit of the section of the Selective Service Law above quoted. The contention of the defendant is that, while it may be and probably is true that the making of such a false certificate by the notary added to and written on the statement of the doctors, respectively, constitutes a crime under the law of the state of New York, such act does not

constitute a crime under the federal laws or statutes, and that such false statements and certificate of the notary public added to the doctors' statement forms no part of the statement itself referred to in section 6 of the Selective Service Law, as that relates to the falsity of the statements made by the doctors themselves contained in the statement or certificate, and not to the falsity of the notarial certificate as to the execution of such statement; that the falsity must actually relate to and concern the fitness or liability for service, and these false certificates of the notary added by him relate only to the execution of the paper and its authenticity, and not to the fitness or liability to service.

I cannot yield to or concur in this narrow construction of the statute quoted. I think the statement or certificate must be taken and read as a whole, or as a completed document in so far as material. Clearly the certificate of the notary that these doctors appeared before him and acknowledged the execution of or signature to a statement or to the statements is material, and a material part of the statement as to physical fitness presented and filed. It is a certificate of authenticity, and one which gives the statement credence with the draft board. This is its purpose. These notarial certificates added to the statements induce the draft board to accept such statements as authentic and genuine, and to act thereon in determining the fitness for military service of the persons or person in whose behalf or interest they are made and presented, and in exempting or declining to exempt such person from service. These false statements or certificates, false when taken and read in their entirety and as a completed statement and certificate, were "as to the fitness or liability" of Mandes for service under the Selective Draft Act.

If a person subject to the Selective Service Law, and seeking exemption or deferred classification, prepares an affidavit required by the law or by the draft board to enable such board to pass on the question of his physical condition and fitness, which is in all respects correct and truthful, and then, in order to comply with the requirement that it be sworn to before a proper officer before presentation or use or consideration by the board, himself adds or procures another to add a certificate that it was "subscribed and sworn to this ——— day of July, 1918," and signs same as an officer authorized to take oaths, when it was not in fact sworn to before such officer, or any officer, can it be said the statement, certificate, or affidavit is not a false statement or certificate? That which gives it authenticity and credence with the board and induces it to act and credit the statement is false. It does not seem to me that Congress intended the limitation of meaning and scope contended for. While we are to strictly construe a criminal statute, we should not rob it of force and vigor to accomplish the purpose for which enacted and intended. I cannot sustain this demurrer to this indictment on the ground urged by the defendant's counsel on the argument and above stated, but must, I am convinced, sustain such demurrer on other grounds.

[3, 4] First. It seems to me that three separate crimes or offenses are included or set out in the one count of the indictment, as each of

the three statements was separately made and separately falsely certified to by the notary. The false certification of each statement constituted a crime, and such false making and certification of each statement should be alleged in a separate and distinct count of the indictment. That there were three statements and three false certificates seems plain from the language of the indictment, viz.:

"The said Harry Mandes thereafter filing with the draft board of the city of Rensselaer these three acknowledged statements in a claim for exemption."

But one offense can be charged in each count of an indictment.

[5] Second. The statute makes it a crime to "make or be a party to the making of any false statement or certificate as to the fitness or liability of himself or any other person for service," etc. This indictment charges as follows:

"The grand jurors * * * upon their oaths do indict and present that Raymond A. Blakeman, late of the city of Rensselaer, county of Rensselaer, New York, did on or about the 4th day of May, 1918, at said city of Rensselaer, state and Northern district of New York, and within the jurisdiction of this court, wrongfully and unlawfully, knowingly and feloniously, make and was a party to the making of a false certificate and statement as to the unfitness and liability of another person for service under the provisions of the so-called Draft Act and the regulations made thereunder, to wit," etc.

The indictment charges a false statement or certificate as to the unfitness or liability, while the statute makes it an offense to make a false statement or certificate "as to the fitness or liability," etc. The offense charged in the indictment is not the one specified in the statute, and the error in using the word "unfitness," instead of "fitness," is not cured by other allegations, as the contents of these statements are not set out in the indictment. The defects can be remedied by a presentation of the case to another grand jury and a new indictment. I do not think it can be held that the words "fitness" and "unfitness" mean the same thing, or that a certificate or statement as to the "unfitness" would include a certificate or statement as to "fitness." The doctors in their statement or certificate might include a statement of every fact as to "unfitness," and exclude, or not include, all information as to "fitness," in a statement of or as to "unfitness." The draft board is entitled to their statement of all facts as to "fitness," which might include the facts as to "unfitness"; but a statement as to "unfitness" clearly does not include the facts as to "fitness."

The demurrer is sustained, and the United States Attorney is authorized and directed to again present the case to the grand jury.